CITY OF HAGERSTOWN *v.* WOOD t/a
Belwood Moving and Storage Company

[No. 348, September Term, 1969.]

*Decided April 6, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Robert E. Kuczynski,* with whom was *Edward Oswald, Jr.,* on the brief, for appellant.

*R. Noel Spence,* with whom was *Omer T. Kaylor, Jr.,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal involves the question of the continuation of a non-conforming use in a residential zone. Upon contracting to purchase the property in question, the appellee, Everette Wood, Jr., trading as Belwood Moving and Storage Company, made application to the building inspector of the appellant, the City of Hagerstown, for a license to alter the premises. He planned to create a side door for loading and unloading household furniture in a moving and storage business. The testimony later given before the Board of Zoning Appeals reveals that this was

not a major moving and storage venture involving the use of tractor trailers, but only one utilizing four "straight trucks" or vans. The building inspector denied the application on the grounds that "a building or storage warehouse cannot be used for storage of household effects in a residential 'A' district."

This ruling was appealed to the Hagerstown Board of Zoning Appeals where it was upheld. The testimony there revealed, however, that this was not simply a question of allowing a prohibited use in a restricted zone. The premises involved had been certified as late as 1965 as a non-conforming use for light manufacturing in a residential district. The problem was that although the appellee's witness indicated it had been used continuously since 1952 for light manufacturing purposes, protestants to the application testified that by 1966 the property had been used purely for retail sales, a higher or less obnoxious use than manufacturing under the Hagerstown Zoning Code, § 68-15 (11). The formal motion and decision of the board further denying the application is totally obscure as to the grounds for refusal and might well justify a remand for failure to comply with the mandate of the Hagerstown Zoning Code, § 68-31 C, to show the grounds for the decision, but the question presented on appeal to the trial court (Rutledge, J.) was a purely legal one, and that was whether the same or a less obnoxious use could be continued on property designated for light industrial use. The court ruled that the dispute over changing from a manufacturing to a retail business was moot, in the true sense of the word, that is, it was a hypothetical debate since under Section 68-21 of the Zoning Code the proposed use was allowable whether or not the property had been used for retail purposes since 1966. The pertinent part of that ordinance provides that "[a] nonconforming use may be changed to a use of the same classification or to a use permitted in a more restricted district but such a use shall not thereafter be changed to a use permitted in a less restricted district."

Agreeing with the trial judge that this is a purely legal

question we uphold his reversal of the Board of Zoning Appeals' decision. Under this statute the appellee had a right to continue in the same or a higher classification. Assuming he did in fact move up from manufacturing to retail business, as long as he did not go back to manufacturing, he could continue his nonconforming use of the premises indefinitely. We will not repeat our extensive elaboration of the authorities that are cited for this proposition in *Phillips v. Zoning Commissioner*, 225 Md. 102, 111, 169 A. 2d 410 (1961) and in *Higgins v. City of Baltimore*, 206 Md. 89, 96, 97, 110 A. 2d 503 (1955).

The only twist that this case presents is that under appellant's view the property owner had already utilized the property for a retail use and this is now a change to a second retail use. Since no one could have successfully contested the first change from manufacturing to retail activity, there is no reason for us to question that right now. As we understand this statute the appellee cannot go up the down staircase, but he can remain where he is, or continue descending. If he were for example to permit the property to be utilized for a use allowed in a service district, a more restricted classification, he could not thereafter return to a retail use. But as long as he remains within the retail classification under the Hagerstown ordinance, he is entitled to change the use of the building to any of the uses listed in § 68-15, assuming he complies with other pertinent provisions of local and state law. This is not the type of statute which freezes the nonconforming use into the single and individualized use which the owner initially held. *Board of Zoning Appeals v. Gue*, 217 Md. 16, 141 A. 2d 510 (1958) (where Section XI of the old 1945 Baltimore County zoning regulations provided any lawful nonconforming use "may continue, provided, however, . . . any attempt to change from such non-conforming use to a different non-conforming use . . . the right to continue to resume such non-conforming use shall terminate, . . .").

Counsel for appellant is correct when he contends that the property cannot be changed to a more obnoxious use,

but where his argument fails is in his tacit assumption that a moving and storage business is a return to a use comparable to light manufacturing. We are ready to concede that a moving and storage business might well be more objectionable in a residential district than most, though certainly not all retail sales outlets, but the ordinance here does not permit such a distinction.

Section 68-15 lists fifteen uses that are permissible in a retail district, and we are told by the interpretive provision (Section 68-7) of the Hagerstown code "if the proposed use is not one in the list of those permitted, it shall be prohibited as though it were included in the prohibitions." Although Section 68-15 includes in subsection (14) "Wholesale and warehouse business" counsel claims that this is not the equivalent of a moving and storage business and should hence be included in the list of businesses prohibited in retail districts. We cannot follow this argument.

On a very elementary level we observe that a warehouse is a place of storage and that moving is generally a natural concomitant of storage, for goods must be taken in and out of warehouses. On a level of statutory interpretation we note that Section 68-9 (36) prohibits from residential districts any "Wholesale warehouse or building or storage warehouse to be used for the storage of household effects or merchandise as a business," subject of course to nonconforming use and other exceptions. This provision is an exact description of the proposed use here, and yet it does not mention "moving" either. Reading Section 68-9 (36) (residential prohibitions) in conjunction with Section 68-15 (14) (retail uses) as part of a common statutory scheme we must conclude that the particular language of Section 68-15 (14) is included in the general language of Section 68-9 (36), indicating that while a moving and storage business is prohibited in a residential area it is permissible in a retail area.

Appellant has raised one other contention, that by failing to obtain a certificate "showing the legal use and zoning classification for such property," before sale or

lease of nonresidential property as required by Section 68-150, the appellee had in effect abandoned his right to the nonconforming use of the property and should not be entitled to resume any other nonconforming use on it. While we recognize a restrictive policy aimed toward eventually eliminating nonconforming uses, *Phillips v. Zoning Commissioner, supra,* 225 Md. at 109, 1 Yokely, *Zoning Law and Planning,* § 153, 2 Rathkopf, *Law of Zoning and Planning,* § 59-1, such a goal can only be achieved within the statutory scheme provided.

Here, the only penalties mentioned in Section 68-153 for failure to obtain a certificate is prosecution, a $10-$50 fine or 5-20 days imprisonment in the county jail. Moreover, such a penalty can only be imposed on the property owner who desires to sell or lease the property. In the absence of much clearer statutory directions we would be hesitant to work a forfeiture of a property right on the contract purchaser. Significantly in this regard the seller had obtained a certificate verifying his nonconforming zoning status in 1965. While he may be required to account for the changes in his use of property in applying for such a certificate in this transaction, we believe the record and judgment in this case should be "proof satisfactory to the City Building Inspector" (Section 68-151) to require the issuance of such a certificate.

*Judgment affirmed. Costs to be paid by appellant.*